OTC
Rec # 54635056125

RECEIVED
JUN 16 2017
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT LOUISIANA
BY_____ kca



UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

KENYON J. GARRETT                         CIVIL ACTION NO.   5:17-cv-0784

    Plaintiff
Versus                                            JUDGE:

UNITED STATES OF AMERICA                  MAGISTRATE JUDGE
    Defendant

### COMPLAINT UNDER THE FEDERAL TORT CLAIM ACT

Plaintiff herein, Kenyon J. Garrett, alleges and avers as follows:
Negligence, Abuse, False Imprisonment, Intimidation, Medical Malpractice, Psychological Injury, Emotional Distress, Wrongful Death, among other things.

### JURISDICTION
1.
This is a claim brought pursuant to the Federal Torts Claims Act, 28 U.S.C. 1346(b), 2671-2680 and 28 U.S.C. S1331 against the United States of America as the responsible party for its agency. Department of Veterans Affairs (VA), Overton Brooks VA Medical Center ("Overton Brooks"), and the agency's employees Kenneth Booth, Toby Mathew, Larry G Thirstrup, Robert Lukeman, Agmasie, B Woldie, Furqan Muhammad, as well as certain other known and unknown Medical and Non-Medical staff of its said VA Medical Center, and Defendant United States of America were "Caretakers" and "Alleged Perpetrators.".

2.
Plaintiff (Kenyon Garrett) herein is a citizen of the United States and in particular, Tyler, Texas and the son of (Clarence Garrett) deceased. (Clarence Garrett) was a United States Citizen, an Honorably Discharged Veteran of the Vietnam War.

3.
Plaintiff filed administrative claims with Overton Brooks on July 2, 2016 as required by 28 U.S.C. 267(a). A copy of the administrative claim and Standard Form 95 is attached as hereto as Exhibits (1A-1E). Plaintiff has exhausted the administrative requirements pursuant to said Act, and therefore, has a clear right to bring such action. A copy of the letter dated January 25, 2017, from the Department of Veterans Affairs (VA) Regional Counsel Office denying Plaintiff's Administrative Tort Claim is attached hereto, made part of the compliant labeled as Plaintiff's Exhibit (2A-B)

### VENUE
4.
Venue is proper under 28 U.S.C. S1402(b) as the incident complained of occurred in the Western District of Louisiana, Shreveport Division.

## CLAIM

5.

On April 11, 2015 Plaintiff's father (Clarence Garrett) was admitted the Overton Brooks in an effort to stabilized Diabetic Ketoacidosis that (Clarence Garrett) was suffering from.

6.

For the purpose of this complaint, plaintiff's father (Clarence Garrett) was a "Vulnerable Adult" and a "Disabled Adult" whose ability to provide protection from Neglect, Abuse, Intimidation, False Imprisonment, and Substandard Care was impaired due to Medical and Emotional Disabilities while Plaintiff's father (Clarence Garrett) was a patient at Overton Brooks VA Medical Center.

7.

During Plaintiff's father (Clarence Garrett) hospitalization at Overton Brooks VA Medical Center from 04/11/15-07/01/15 (Clarence Garrett) suffered from a Bilateral Subdural Hemorrhage which Overton Brooks medical staff failed to treat that lead to Plaintiffs' father (Clarence Garrett) untimely death on 08/28/2015. Furthermore, Plaintiffs' father suffered from delayed treated Right Iliac Abscess, untreated Tachycardia, Medication Toxicity, Seizure Activity, Depression, Suicidal Ideation, Left Shoulder Effusion, multiple wounds to body area that occurred at Overton Brooks from 04/11/15-07/01/15, Dehydration, Loss of Mobility, Neuroleptic Malignant Syndrome, Malnutrition, Urinary Tract Infections, and several other reoccurring infections while Plaintiffs' father (Clarence Garrett) received medical care from Overton Brooks VA Medical Center from 04/11/15 – 07/01/15.

8.

While at Overton Brooks Plaintiff's father (Clarence Garrett) was treated by Kenneth Booth, Larry G Thirstrup, Robert Lukeman, Agmasie, B Woldie, multiple medical staff members (both clinical and non-clinical), Resident Physicians and medical students. Defendant, Overton Brooks' agents and employees Kenneth Booth, Robert Lukeman, Agmasie B Woldie, Larry G Thirstrup, Arvid Yekanath, Toby Mathew, and other medical staff/non-medical staff that participated in Plaintiffs' father (Clarence Garrett) medical care were in the course and scope of their employment and agency with the Defendant at all times complained of herein.

9.

All finding are confirmed in the medical records of Plaintiffs' father (Clarence Garrett) from (Clarence Garrett) 04/11/15 – 07/01/15 hospitalization at Overton Brooks. Defendant's employees, Agmasie B Woldie, Robert Lukeman, Larry G Thirstrup, Kenneth Booth, Toby Mathews, Arvid Yekanath, Resident Physicians, multiple medical and non-medical staff members who were responsible for (Clarence Garrett) medical care failed to adequately provide the highest Standards of Medical Care during Plaintiffs' father (Clarence Garrett) 04/11/15 – 07/01/15 hospitalization at Overton Brooks VA Medical Center.

10.

At all pertinent times hereto, the actions of Overton Brooks' employees Agmasie B Woldie, Larry G Thirstrup, Kenneth Booth, Arvid Yekanath, Toby Mathews, Robert Lukeman, Resident Physicians, and any/all medical and non-medical staff members that

participated in Plaintiffs' father (Clarence Garrett) medical care were within the course and scope of their employment with Overton Brooks VA Medical Center.

11.

Plaintiff's damages/death were solely caused by the negligence of Agmasie B Woldie, Kenneth Booth, Larry G, Thirstrup, Robert Lukeman, Toby Mathews, Arvid Yekanath, the multiple medical staff/ non-medical staff, and Overton Brooks VA Medical Center said acts of negligence being actionable under Louisiana Civil Code Article 2115 and other Laws of the State of Louisiana; said negligence with regard to Kenneth Booth, Agmasie B Woldie, Larry G, Thirstrup, Robert Lukeman, Toby Mathews, Arvid Yekanath, the multiple medical staff/non-medical staff, and Overton Brooks VA Medical Center consisting of, but not limited to the following acts or omissions:

- A. Failure to discontinue medication after severe side effects developed.
- B. Failure to treat signs of intestinal bleed
- C. Failure to treat according to appropriate/correct diagnosis
- D. Failure to provide adequate nutrition
- E. Failure to get informed consent for procedures and transfer of Plaintiffs' father (Clarence Garrett)
- F. Failure to properly/timely assess, diagnoses, and treat medical diagnosis
- G. Failure to treat and diagnose depression
- H. Failure to transfer to another facility when higher level of care was available
- I. Failure to notify medical power of attorney when patient was unable to make medical decisions
- J. Failure to warn of known risk of Medications
- K. Falsification of medical records
- L. Delayed Diagnosis
- M. False Imprisonment by medical staff/falsification of medical records
- N. Failure to treat medical diagnosis
- O. Administration failed to correct patient/Plaintiff complaints regarding patient (Clarence Garrett) medical care
- P. Failure to advocate for patient
- Q. Other acts of negligence as of yet unknown but subject to discovery in this litigation

12.

On 04/11/15 a Right Internal Jugular Central Venous Catheter was inserted by Physician Furqan Muhammad into Plaintiffs' father (Clarence Garrett) without informed consent. Staff did not allow Plaintiff to sign informed consent even when Overton Brooks did receive (Clarence Garrett) medical power of attorney on 03/11/15 clarifying Kenyon Garrett as Medical Power Of Attorney for Clarence Garrett. See Exhibit (3A-B) complaint to Overton Brooks VA Administer Toby Mathews. Per medical record (Clarence Garrett) was not coherent or medically stable to sign an informed consent, and thus (Clarence Garrett) nor Plaintiff wasn't communicated/informed of the risk associated with the placement of a right internal jugular central venous catheter. Per (Clarence Garrett) medical record the placement of the Right Internal Jugular Central Venous Catheter resulted in (Clarence Garrett) receiving Methicillin-Resistant Staphylococcus Aureus from Dr. Furqan Muhammad not using the correct aseptic technique, or sterile

equipment for this procedure, which the contracting of Methicillin-Resistant Staphylococcus Aureus contributed to (Clarence Garrett) untimely death.

13.

On or about 04/12/15 (Clarence Garret) was placed in a 4 point restraint, per medical records (Clarence Garrett) was pulling out his tubes and trying to get out of bed. Overton Brooks medical nursing staff falsified documents by stating that (Clarence Garrett) was in a 2 point restraint, but evidence will prove that he was placed in a 4 point restraint. No documentation was found stating (Clarence Garrett) was checked for release from restraints, no documentation stating staff checked (Clarence Garrett) for circulation to upper and lower limbs where restraints was applied, no physician documentation regarding restraints. Per medical records (Clarence Garrett) was held in restraints longer than 24 hours. Exhibit (4) shows wounds to (Clarence Garrett) lower right leg where a restraint was placed and Clarence Garrett circulation was not checked on a constant basis by staff causing these circulation wounds. (Clarence Garrett) suffered from PTSD which the negligent use of these restraints caused him to become Emotional Distressed, and the wounds to (Clarence Garrett) right lower leg that he didn't have before admit played a key role in causing (Clarence Garrett) reoccurring infections.

14.

On or about 04/16/15 Physician Larry G, Thirstrup, ordered exams to study (Clarence Garrett) cardiac enzymes. Per medical records these exams had shown an increase in cardiac enzymes and congestive heart failure. Dr. Thirstrup failed to follow-up on these finding resulting in (Clarence Garrett) having serious bouts of Ventricular tachycardia during his 04/11/15 – 07/01/15 hospitalization at Overton Brooks. Dr. Thirstrup failed to diagnose patient ejection fraction of 25%-30% see Exhibit (9), neglected to treat (Clarence Garrett) congestive heart failure, which caused (Clarence Garret) several cardiac emergencies during his hospitalization at Overton Brooks per his medical record.

15.

On or about 04/16/15, 04/21/15, and 04/26/15 (Clarence Garrett) the following exams were ordered by the physicians of Overton Brooks are as follows: Computed Tomography Scan, Magnetic Resonance Imaging, and a Lumbar Puncture. Theses exams were ordered due to (Clarence Garrett) constantly changing mental status, incoherent, and weakness to upper extremities. CT scan on 4/16/15 shown, acute & sub acute infarct compatible with Subdural Hygroma. MRI of brain on 04/21/15 displayed Bilateral Chronic Subdural Hematomas versus Subdural Hygromas with 2mm right sided midline shift. On 4/2615 lumbar puncture displayed an opening pressure of 28 and 29 on separate occasions. Per medical records (Clarence Garrett) exhibits signs of subdural hemorrhage such as confusions, decreased memory, problems speaking/ swallowing, drowsiness, seizures, waxing & waning cognition, and weakness in bilateral limbs. Kenneth Booth, Agmasie Woldie, and other Physicians employed at Overton Brooks neglected to treat (Clarence Garrett) bilateral Subdural Hematomas which lead to his untimely death.

16.

On or about 04/15/15 Overton Brooks employed Physicians' Indira V.Rao, misdiagnosed (Clarence Garrett) with Dementia which can and often does mimics Sudural Hematomas and Encephalitis that (Clarence Garrett) was diagnosed with per his Overton Brooks VA medical record. Plaintiff informed all Physicians both Hospitalists and Resident Physicians that (Clarence Garrett) drove his self over 100 miles to all his doctor

appointments at Overton Brooks, did all of own personal business, and did not exhibit any signs or symptoms of Dementia before he became ill. Therefore medical staff failed to treat (Clarence Garrett) Subdural Hematomas and Encephalitis because Overton Brooks physicians misdiagnosed (Clarence Garrett) with Dementia that he clearly didn't exhibit and signs or symptoms before his be came ill. Overton Brooks Physicians let (Clarence Garrett) lie in bed to literally waste away, and neglected not to treat the acute hemorrhages, or seizures that were displayed on the MRI brain scan on 4/21/15. Physician Jared Daniel Macfarlin documented in (Clarence Garrett) record that (Clarence Garrett) needed another MRI of the brain, but he was on a waiting list with 8-10 patients in front of him. (Clarence Garrett) did not receive another MRI per his medical record because of this waiting list, he only receive a CAT scan of the brain a month later on 6/19/15. By Overton Brooks employed Physician diagnosing (Clarence Garrett) with the wrong diagnosis (Dementia) they neglected to treat the correct diagnosis (Subdural Hematomas), and also by placing him on an imaging waiting list was a major reason for his untimely death.

17.

On or about 04/28/15 (Clarence Garrett) was found by Plaintiff neglected lying in urine with no staff members around to help clean him. (Clarence Garrett) was lying in the urine so long that his gown was brown, see Exhibit (5-5B). Around 05/08/15 (Clarence Garrett) was again found neglected lying in urine so long that it was running from underneath his bed pad, see Exhibit (6). On or about 06/03/15 Overton Brooks employee Physical Therapist Assist Dorthy P Phelps documented another issue with neglect in (Clarence Garrett) medical records that "patient was lying in bed with severe need of hygiene," Further proving that (Clarence Garrett) who was a vulnerable and disabled adult was neglected by Overton Brooks VA Medical Center employees by making (Clarence Garrett) lie in urine and feces for long period of times contributing to (Clarence Garrett) reoccurring infections, depression, abuse, and emotional distress while he was hospitalize at Overton Brooks.

18.

On 04/29/15 a letter was sent to Overton Brooks Administrator Toby Mathews from Plaintiff regarding the medical care that (Clarence Garrett) was receiving at Overton Brooks, see Exhibit (3-3B). Toby Mathews did reply to Plaintiff's letter on 5/19/15, see Exhibit (7). However, the responses that Mr. Mathews sent to Plaintiff were inaccurate. Plaintiff sent and placed in drop box at Overton Brooks Administer Toby Mathew office door another complaint letter on 5/29/15 regarding (Clarence Garrett) medical care, but Toby Mathew failed to respond to this letter; and failed to staff Overton Brooks with the appropriate number of staff needed to care for (Clarence Garrett) which this neglect ultimately contributed to Clarence Garrett untimely death. See Exhibit (8-8B)

19.

A meeting was schedule for 05/08/15 at 3pm by Administration Officer Sonya Washington between Dr. Agmasie Woldie and Plaintiff (Kenyon Garrett) to discuss (Clarence Garrett) medical care and prognosis. Dr. Woldie refused to meet with Plaintiff even after several staff nurses tried to call and page him regarding this meeting; Plaintiff waited over 4 hours for Dr. Woldie. Neither Dr. Woldie, nor any resident physicians, or anyone from administration came to speak to me regarding my father's medical care. Dr. Woldie refused to meet and discuss with Plaintiff the best treatment options for my father

(Clarence Garrett). On 05/14/15 Dr. Woldie falsified documentation by stating in (Clarence Garrett) medical chart that he spoke with Plaintiff on the phone regarding (Clarence Garrett) medical care, and left his private phone number for family to call. Dr. Woldie continued actions while managing (Clarence Garrett) medical care fell below the recognized standard of medical care therefore contributing to (Clarence Garrett) untimely death.

20.

On or about 04/27/15 Plaintiff's father (Clarence Garrett) was started on the antibiotic Meropenem for 10 days. Then on 05/25/15 Overton Brooks employed Physicians started (Clarence Garrett) on the antibiotic Ertapenem for a 6 weeks completion period. Per (Clarence Garrett) medical records these medications was agreed upon by Overton Brooks VA Infection Disease Physicians Mekala Vijayashree, MD and Robert Penn, MD. Both of these medications are classified as Carbapenems which has serious warning for individuals taking these medications with history of head injuries/brain tumors, seizures, and kidney disease. (Clarence Garrett) medical record reflects that he was diagnosed with all of these issues, but Overton Brooks Physicians ignored these warning; and continued to give (Clarence Garrett) these medications without exploring other treatment options. Overton Brooks physicians neglected to explain to (Clarence Garrett) or Plaintiff the severe warning of these medications and the severe side effects of that these medications may have on (Clarence Garrett). While on Ertapenem (Clarence Garrett) medical record stated that he exhibit the following signs and symptoms: irregular heartbeat, jerking of all extremities, hallucinations, voice changes, mental depression, confusion, weight loss, and seizures. Overton Brooks employed Physicians neglected to recognize that (Clarence Garrett) was exhibiting signs of Ertapenem toxicity, and continue to medicate him with these harmful medications further contributing to (Clarence Garrett) untimely death. The signs and symptoms that (Clarence Garret) was exhibiting from the ingestion of these medications would have been recognizable by a reasonable health care provider, however they were neglected by Overton Brooks staff Physicians and resident Physicians causing complications that also lead to (Clarence Garrett) untimely death.

21.

From 05/22/15 to 06/08/15 (Clarence Garrett) medical record shows that he was suffering from decreased Hemoglobin of 6.0 and below. Overton Brooks continue to neglect (Clarence Garrett) and let him waste away in bed at their facility without informing his Medical Power of Attorney that he needed an immediate blood transfusion. A reasonable healthcare provider would have addressed this important healthcare issue, but Overton Brooks medical staff neglected to do so. Per medical records Clarence Garrett was suffering from mental confusion, paranoia, hallucinations, PTSD, depression and was not able to make his own medical decisions during that time. Every medical and non-medical personal employed at Overton Brooks except Kenneth Booth, MD and Arvid Yekanath, MD documented in (Clarence Garrett) medical record that (Clarence Garrett) was confused, hallucinating, paranoid, depressed, and needed constant reorienting proving that (Clarence Garret) wasn't able to make his own sound medical decisions. On 6/3/15 Dr. Kenneth Booth documented that patient signed his own informed consent when other staff members documented in (Clarence Garret) medical chart that he was severely confused. However, Kenneth Booth, MD then documented in (Clarence Garrett) medical

chart on 6/8/15 "patient will not sign or make any medical decisions without son who is patient Medical Power of Attorney." (Clarence Garret) was severely anemic for over 2 weeks during his hospitalization at Overton Brooks which a reasonable healthcare provider would not let a patient lay in a hospital bed without addressing this serious medical issue as Overton Brooks physicians forced (Clarence Garrett) to do.

22.

On 6/16/15, 6/25/15, and several other occasions (Clarence Garrett) was found False Imprisoned in his bed by Overton Brooks staff members. Overton Brooks staff members were raising all 4 side rails up on (Clarence Garrett) bed and gave the rationalized that he was confused and trying to get out of bed. Nursing staff informed Plaintiff when question them about raising all 4 sides rails of (Clarence Garrett) hospital bed stated "they won't send us no help to watch him, he is a fall risk, confused and is steadily trying to get out of the bed." (Clarence Garrett) suffered from PTSD and with Overton Brooks staff members stopping his egress without a Physician's order caused (Clarence Garrett) lots of Emotional Distress, which caused him more depression. Staff was documenting that (Clarence Garret) side rails was up times 3, but side bed rails were raised times 4 which constitutes a restraint; and is falsification of records by Overton Brooks employed nursing staff. It is well documented in (Clarence Garret) record that "patient was confused and trying to get out of the bed." Futhermore, (Clarence Garrett) medical record doesn't show any documentation where Overton Brooks provided (Clarence Garrett) with a sitter (staff member to set with him), instead of locking him in a bed so he couldn't egress. On or about 06/11/15 Kenneth Booth, MD documented that patient (Clarence Garrett) is constantly trying to get out of the bed. This constant negligent behavior and false imprisonment of (Clarence Garrett) who was a vulnerable and disabled adult played a key role in (Clarence Garrett) untimely death.

23.

On or about 5/23/15 (Clarence Garrett) informed Plaintiff that he felt intimidated by Overton Brooks Physicians. Clarence Garrett informed Plaintiff and family that the doctors (Douglas Newell and Agamsie Woldie) informed him in a loud voice that he and his family was a problem, and it would be best if he was dead. He was persuaded to sign a DNR form on 5/1/15 by Dr. Newell. When Plaintiff seen this information on the board located in (Clarence Garrett) room on 5/23/15 around, 2pm Plaintiff then requested that the Overton Brooks House Supervisor come to my (Clarence Garrett) room. In front of the House Supervisor that was on duty, (Clarence Garrett) stated " I don't know what a DNR is, them doctors kept yelling at me that I need to be one," this would communicated by (Clarence Garrett) in front of House Supervisor and staff nurse. It is noted in (Clarence Garrett) medical record that Douglas Newell and Social Worker Jenny L. Prejean tried to get (Clarence Garrett) to become a DNR status and to change his Medical Power of Attorney on different occasions. Also, (Clarence Garrett) spoke several times that he felt abuse because when he was scheduled for any type of imaging at Overton Brooks, (Clarence Garrett) stated that he had to wait outside in the rain or hot the sun for long periods of time because Overton Brooks could not use the imaging equipment that was located on inside of the building. (Clarence Garrett) continued to state that Overton Brooks was using alternative imaging equipment that was located in a building not connected to the hospital; this negligence behavior increased (Clarence Garrett) depression in an already vulnerable adult.

24.

On or about 5/11/15 (Clarence Garrett) had a delayed diagnosis of a right gluteal abscess to right hip. Per (Clarence Garrett) medical records he made several complaints to Overton Brooks staff members and Physicians regarding severe hip pain dating back to 3/9/15/ and 3/25/15 per his medical records. Overton Brooks misdiagnosed his right hip pain as osteoarthritis to right hip area. However, the misdiagnosed hip pain was actually an infected area (abscess) that required an insertion of a Jackson-Pratt drain to help treat this infected area. This delayed diagnosis caused (Clarence Garrett) several serious reoccurring infections through-out his body, that if the right gluteal abscess wasn't neglected by Overton Brooks Physicians (Clarence Garrett) wouldn't have suffered so long with this severe infection. On 6/30/15 (Clarence Garrett) complain to the Overton Brooks VA staff that he was having pain to his coccyx area. Dr. Kenneth Booth documented in (Clarence Garrett) medical record that (Clarence Garrett) was turned over and coccyx area assess. Dr. Kenneth Booth failed to document how (Clarence Garrett) coccyx area was assess because (Clarence Garrett) was a dark pigmented patient whose skin could not be assess for a bed sore by just sight only. Medical literature supports that a person with dark pigmented skin must be touch and felt not just visualized to determine if a dark pigmented patient is suffering from any type of bedsore. Assessing a dark-skin patient by visualization only for a bed sore can't constitute a proper assessment, and Dr. Booth documentation doesn't support that he assess Clarence Garrett in any other manner besides visualization. (Clarence Garrett) was diagnosed with a bedsore to the coccyx area on 7/2/15 by a private hospital. Dr. Kenneth Booth misdiagnosed (Clarence Garrett) again, and discharged him with an infected bed sore to his coccyx area adding to his untimely death. Even though, (Clarence Garrett) complain to staff that he had severe pain to his coccyx area, staff neglected to properly assess and treat this area of pain allowing (Clarence Garrett) to lie in bed on this particular area for over 3 months causing severe infection to (Clarence Garrett) coccyx area.

25.

On or about 6/26/15 Plaintiff express to Overton Brooks staff nurses that (Clarence Garrett) was having Jerking movements to his bilateral upper and lower extremities with white discharge coming from his meatus area, and a temp of a 100.0. Dayna M. Neier, RN visualized and documented these finding in (Clarence Garrett) medical record and informed Dr. Mehmood who was the on-call physician for that night. Dr. Mehmood came to (Clarence Garrett) room to assess him along with nurse (Dayna M. Neier) and myself; however Dr. Mehmood failed to document his finding which were signs and symptoms of side effects of his medications; or possible seizure activity; also Dr. Mehmood neglected to treat these signs and symptoms per (Clarence Garrett) medical records. By Dr. Mehmood failing to act as a reasonable healthcare provider in this situation caused (Clarence Garrett) to suffer further medical neglected. Overton Brooks employed staff was inserting an indwelling Foley catheter into (Clarence Garrett) without securing the catheter to his leg causing the Foley to constantly pull on his genital area. Overton Brooks nursing staff neglected to secure (Clarence Garrett) Foley catheter to his leg which was causing reoccurring urinary tract infections and constant discomfort to (Clarence Garrett) that a competent nursing staff should have corrected, see Exhibit (12).

26.

On or about 5/22/15 Continue Care Hospital in Tyler, TX clinically accepted (Clarence Garrett) because Overton Brooks VA Medical Center was not able to provide (Clarence Garrett) with the appropriate care he needed to rehab his self back to health. A 6/15/15 meeting with Physician Kenneth Booth, MD admitted that Overton Brooks didn't have the services that (Clarence Garrett) actually needed to rehab. (Clarence Garrett) lost all mobility to his upper and lower extremities and a total of 45 pounds during his Overton Brooks hospitalization from 4/11/15-7/1/15. Their is no documentation from Overton Brooks clinical staff stating that (Clarence Garrett) was ever helped out of his bed to ambulate, or even helped out of bed to set up in a chair. This 3 month neglect lead to (Clarence Garrett) losing all mobility to a once mobile individual just before his 4/11/15 admit to Overton Brooks VA Medical Center. Overton Brooks employed staff Gary D. Rainwater, RN and Zelda Greggs, RN Case Manger documented in (Clarence Garrett) medical record "this UM/CM visited Dr. Lukeman to discussed this patients transitional needs and potential benefits of care that can maximize his functional capacity provided by a LTAC facility, and the care that he needs is not located within this facility. Because of this patient's debilitated status, Occupational Therapy Services (not available at this facility) can increase his functional capacity." Plaintiff was informed on 6/16/15 by Social Services Janet Michaels that Toby Mathews, Robert Lukeman, and Kay Sanders have decided that (Clarence Garrett) transfer to Continue Care Hospital will be denied by the VA. Overton Brooks chose to neglect (Clarence Garrett), let him lie in bed; and not provide him with the medicals services he needed to get better even when a higher level of care facility had clinically been approved to accept him. This denial of transfer to a higher level of care further contributed to (Clarence Garrett) emotional distress and depression. Overton Brooks medical/administration staff knew that they did not have the ability to care for (Clarence Garrett), but refused to transfer him to a medical facility that could address his needs therefore causing further injury that ultimately lead to (Clarence Garrett) death.

27.

On or about 4/29/15 Dr. Arvind Yekanath was consulted by Resident Physician Ashley Sommerhalder regarding (Clarence Garrett) steadily changing mental status, depression, PTSD, and hallucinations. Dr. Yekanath did an out-patient assessment for an inpatient on (Clarence Garrett) called a Geriatric Depression Scale Short Form (15). (Clarence Garrett) scored a 6 on this form which signals depression in any individual taking this exam, but with this score Dr. Arvind Yekanath neglected to prescribe or suggest any type of depression medication for (Clarence Garrett) condition. On 5/27/15 Dr. Yekanath was consulted again regarding (Clarence Garrett) mental confusion and depression, he document that patient would not talk with him. Even with (Clarence Garrett) not speaking with Dr. Yekanath he documented to keep his recommendation from 4/29/15, but yet (Clarence Garrett) would not speak with him. A physician can't properly document that a patient is not suicidal, homicidal, or severely depressed if that physician can't properly assess a patient. Once again Dr. Yekanath was consulted regarding (Clarence Garrett) mental confusion, PTSD, and depression on 6/10/15, but he neglected to properly assess (Clarence Garrett) again. Dr. Yekanath documented in (Clarence Garrett) medical record "patient was on the toilet, I will attempt to see vet again later today," however there was not another entry in (Clarence Garrett) medical records stating that Dr. Yekanath attempted to assess and provide medical care/recommendations for

(Clarence Garrett) as he documented he would. This continued negligence caused (Clarence Garrett) severe psychological distress that Overton Brooks delayed to address resulting in (Clarence Garrett) untimely death.

28.

On or about 4/14/15 (Clarence Garrett) receive the following antipsychotic medications, Haloperidol, Quetiapine, and Remeron and continued to receive these medications throughout his 04/11/15 – 07/01/15 hospitalization at Overton Brooks. Before his illness (Clarence Garrett) did not display any signs or symptoms of psychotic behavior, and this was explained several times to the Physicians at Overton Brook. (Clarence Garrett) was started on Seroquel nightly beginning 6/3/15 this antipsychotic medication caused tremors, agitation, sudden mental changes, increased hallucinations, aggressive behavior, and he was diagnosed with delirium on 6/23/15 by Overton Brooks employee Stacey Dillahunt, PA-C, during the time he was prescribed the Seroquel. When (Clarence Garrett) was discharged from Overton Brooks on 7/1/15 he was admitted to a private hospital Trinity Mother Frances on 7/2/15 with a medical diagnosis of Neuroleptic Malignant Syndrome from his intake of the medication Seroquel that he received from Overton Brooks, which Overton Brooks failed to recognize and treat this medical emergency contributing to (Clarence Garrett) untimely death see Exhibit (9).

29.

On or about 6/8/15 Dr. Kenneth Booth wrote an physician order to have Overton Books dietitians speak to Plaintiff and (Clarence Garrett) regarding different food choices for him to help improve his diet, and for the nursing staff to help (Clarence Garrett) with his meals; due to the loss of his fine motor skills. The issue was (Clarence Garrett) wasn't mentally able to complete this task, but Clinical Dietitian Vicki M. Blackwell fell to contact Plaintiff (Kenyon Garrett) to discuss better food choices for (Clarence Garrett), and there is no documentation where Vickie Blackwell attempted to contact Plaintiff's regarding my father's nutrition. Vickie Blackwell document in (Clarence Garrett) medical record that he was severely depressed, and that he had an Albumin level under 2 which this low lab value inhibited (Clarence Garrett) body ability to promote healing. Overton Brooks staff members to include nurses and Physicians knew Clarence Garrett medical lab values were low several times throughout his hospitalization, but neglected to discuss this important information with his family/Plaintiff to formulate a medical plan for (Clarence Garrett). Again Overton Brooks employed staff members chose to allow (Clarence Garrett) to lie in their hospital bed knowing that he needed in increase in his Albumin level to promote healing within his body, and not provide him with the proper medical care he needed to help him survive. Dr. Tejinder Singh also falsified documentation in (Clarence Garrett) medical record on 6/15/15 by stating "I talk with the father and son who where against patient having a feeding tube." Plaintiff (Kenyon Garrett) never met with Dr. Singh but with a Resident Physician Karandeep Maur, MD were we discussed that since my father could still eat that we should encourage him to eat and offer him different food choices that he may like since he was offered the same food choices every day for 3 months per medical records. Physician Karandeep Maur, MD also documented in (Clarence Garrett) medical record that "patient suffered from a GI bleed while in the MICU, but staff failed to consult a GI physician regarding patient GI bleed." Debra Maffeo, RN documented on 6/20/15 that she help (Clarence Garrett) with his dinner tray because he was unable to do so. This was the only documentation

throughout (Clarence Garrett) medical record were an Overton Brooks staff member attempted to help (Clarence Garrett) with his meals. Plaintiff was informed by other Overton Brooks non clinical workers (Clergy) that Overton Brooks staff members would set (Clarence Garrett) meal trays in his room without anyone attempting to help him consume his meals knowing that he required help. Overton Brooks medical staff failed to address (Clarence Garrett) decreased albumin level that would have prompted his body to heal, and neglected to provide staff to help (Clarence Garrett) with his meals. A reasonable healthcare provider would have addressed this major healthcare issue, therefore this neglected issue contributed to (Clarence Garrett) untimely death.

30.

On or about 7/1/15 (Clarence Garrett) was Inappropriate Discharged from Overton Brooks to Watkins Logan VA Home in Tyler, TX. Overton Brooks employed Nurse Sherry M. Purifoy, RN, BSN documented the following information on 7/1/15 at 07:06 "pt awake but not responding appropriately," just before he was getting discharged from Overton Brooks. In (Clarence Garrett) medical record his laboratory values and vital signs displayed that he was Tachycardia and severe dehydrated on the day he was discharged from Overton Brooks, however staff ignored (Clarence Garrett) further medical decline and discharged him anyways without alerting Plaintiff about (Clarence Garrett) medical condition. (Clarence Garret) was then admitted to a private hospital on 7/2/15 for severe dehydration, severe malnutrition, tachycardia, and Neuroleptic Malignant Syndrome, see Exhibit (10). (Clarence Garrett) was not able medical or mentally able to agree to his discharge on 7/1/15 from Overton Brooks, never the less he was discharged severely medically compromised. However, a patient consent for transfer was found in the medical record sign by Physician Mustak Melwood and Jennifer M Blair. This consent stated "<u>phone consent from POA</u>," (which doesn't represent a legal document due to it being completed incorrectly) to transfer but since (Plaintiff) was (Clarence Garrett) medical power of attorney, Plaintiff did not give Overton Brooks this consent to transfer (Clarence Garrett). This was another example how Overton Brooks employed staff members falsified documents in regards to (Clarence Garrett) medical care, neglected to properly assess him before discharge, inappropriate discharged him, which caused his premature death, see Exhibit (11)

31.

As the result of negligence by said agents and employees both named and unnamed of Defendant, as described above; Plaintiff's father (Clarence Garrett) sustained personal injuries and neglect that resulted in (Clarence Garrett) untimely death compensable under the laws of the State of Louisiana and under the Federal Tort Claims Act, including but not limited to the following:

Delayed diagnosis, failure to diagnosis, false imprisonment, intimidation, inappropriate discharge, emotional distress, failure to treat medical diagnosis, physical and mental anguish, pain and suffering, medication toxicity, loss of mobility, and all acts of negligence as of yet unknown but subject to discovery in this litigation caused wrongful death to (Clarence Garrett). The employees both known and unknown of the Defendant's Department of the Veterans Affairs and Overton Brooks VA Medical Center while in the course and scope of their employment for which Defendant is liable and responsible under the Federal Torts Claims Act for payment of medical treatment cost, loss of wages, and economic damages suffered by Plaintiff's father.

32.

As a result of Defendant's negligence (Clarence Garrett) suffered injuries that resulted in his untimely death. These damages in the compensable amount of Four Million ($4,000,000.00) Dollars as indicated on my SF 95 submitted with my administrative claim see Exhibit (1A).

33.

Plaintiff demands a trial by jury in accordance with FRCP Rule 38

38.

WHEREFORE Kenyon J Garrett respectfully prays for judgment against the United States in the amount of Four Million ($4,000,000.00) Dollars plus post interest and cost from the date of judicial demand until paid, together with all cost of these proceeding, to include but not limited to, the cost of expert witness of any description. For all other relief, both general and equitable, necessary in the premises.

Respectfully submitted,

*/s/ Kenyon Garrett*

Kenyon J. Garrett
Plaintiff Pro Se
P.O. Box 132826
Tyler, TX 75713
Phone: (903) 574-0783
Email: kentyler88@gmail.com