# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# SHREVEPORT DIVISION

| | | |
|---|---|---|
| **KENYON J. GARRETT** | * | **CIVIL ACTION NO. 17-0784** |
| **VERSUS** | * | **JUDGE ROBERT G. JAMES** |
| **UNITED STATES OF AMERICA** | * | **MAG. JUDGE KAREN L. HAYES** |

## REPORT AND RECOMMENDATION

Before the undersigned magistrate judge, on reference from the district court, are two motions: 1) motion for partial dismissal for lack of subject matter jurisdiction [doc. # 7] filed by the United States; and 2) motion to dismiss for perjury [doc. # 26] filed by plaintiff Kenyon Garrett. For reasons assigned below, it is recommended that the government's motion [doc. # 7] be granted-in-part and denied-in-part, and that plaintiff's motion be denied.

## Background

On June 16, 2017, Kenyon Garrett filed the instant pro se medical malpractice action against the United States under the Federal Tort Claims Act ("FTCA") 28 U.S.C. §§ 1346(b), 2671-2680. According to the complaint, plaintiff's father, Clarence Garrett, was a patient at Overton Brooks VA Medical Center ("Overton Brooks") from April 11 to July 1, 2015. Plaintiff contends that his father received substandard care during his almost three month hospitalization at Overton Brooks, which culminated in his premature death on August 28, 2015. Besides the United States, plaintiff named several other defendants in his original complaint, such as, the Department of Veterans Affairs, Overton Brooks, plus various medical providers including,

Kenneth Booth, Toby Mathew, Larry G. Thirstrup, Robert Lukeman, Agmasie B. Woldie, Furqan Muhammad, Arvind Yekanath (incorrectly spelled as "Arvid Yekanath"), together with "other known and unknown medical and non-medical staff." (Compl.). Plaintiff alleged that defendants were responsible for abuse, negligence, false imprisonment, intimidation, and medical malpractice, which resulted in Clarence Garrett's psychological injury, emotional distress, and wrongful death. *Id*. Plaintiff requested compensatory damages totaling $4 million. *Id*.

On July 20, 2017, plaintiff supplemented his complaint to correct the spelling of one defendant (Yekanath) and to add eight paragraphs, specifying claims for delayed diagnosis, failure to diagnose, false imprisonment, intimidation, inappropriate discharge, emotional distress, and failure to treat medical diagnosis, resulting in physical and mental anguish, pain and suffering, medication toxicity, and loss of mobility, which combined to cause Clarence Garrett's wrongful death. (Suppl. Compl. [doc. # 3]).

On August 31, 2017, plaintiff voluntarily dismissed his claims against Toby Mathew. (Stipulation of Dismissal [doc. # 5]). On September 1, 2017, the United States filed an answer to the complaint, as amended [doc. # 8], together with the instant motion seeking the dismissal of defendants, Kenneth Booth, Toby Mathew, Larry Thirstrup, Robert Lukeman, Agmasie Woldie, Furqan Muhammad, Arvind Yekanath, the Department of Veteran Affairs, and Overton Brooks [doc. # 7]. The motion also sought dismissal of all claims – aside from medical negligence – on the twin grounds that plaintiff failed to exhaust administrative remedies as to these claims and because the government did not waive its sovereign immunity for intentional torts.

On September 14, 2017, plaintiff filed a response to the motion to dismiss, in which he did not oppose the dismissal of any defendant – aside from the United States – but *did* oppose the

dismissal of any claims. [doc. # 17]. Plaintiff also filed a second amended complaint (styled as "Amended Complaint") [doc. # 18] – without obtaining prior leave of court or the written consent of defendant.[1]

On September 15, 2017, plaintiff and the United States filed a joint stipulation of dismissal as to plaintiff's claims against Kenneth Booth, Toby Mathew, Larry Thirstup, Robert Lukeman, Agmasie Woldie, Furqan Muhammad, Arvind Yekanath, the Department of Veteran Affairs, and Overton Brooks VA Medical Center. [doc. # 19]. On September 22, 2017, the United States filed its reply in support of its motion for partial dismissal, whereby it conceded that its motion was moot as it related to dismissal of parties, but still actionable as to plaintiff's claims for intimidation, abuse, emotional distress, false imprisonment, and psychological injury. (Def. Reply [doc. # 24]).

On September 28, 2017, plaintiff filed the instant "Motion to Dismiss for Perjury," in which plaintiff prayed that the "Court grant Plaintiff's Motion to Dismiss this lawsuit in favor of the Plaintiff on the grounds of Perjury that was committed by the Defense, and grant Plaintiff the requested full judgement sum of $4,000,000 . . ." The parties filed several rounds of briefs related to this motion. *See* doc. #s 28-35.[2] Now, however, briefing is complete; the matter is ripe.

---

[1] The second amended complaint and related motions are addressed via separate order.

[2] On October 25, 2017, plaintiff filed a motion to strike the government's surreply. The court will address that motion via separate order.

## Law and Analysis

I.   **Government's Motion to Dismiss**

The United States, as sovereign, is immune from suit except in the manner and degree sovereign immunity is waived. *United States v. Testan*, 424 U.S. 392, 96 S.Ct. 948 (1976). In the absence of an express congressional waiver of immunity, an action against the United States or its agencies does not fall within the judicial power of the federal courts. *See Glidden Co. v. Zdanok*, 370 U.S. 530, 82 S.Ct. 1459 (1962).

The FTCA represents a limited waiver of sovereign immunity; suits filed thereunder must be filed in exact compliance with its terms. *Childers v. United States*, 442 F.2d 1299, 1303 (5th Cir. 1971). Under the FTCA,

> the district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States for money damages . . . for . . . personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).

The FTCA establishes the exclusive remedy for tort claims arising out of the actions of the federal government and its employees. 28 U.S.C. § 2679. The Act subjects the United States to tort liability if a private person would be liable for the same act under state law. *Life Partners Inc. v. United States*, 650 F.3d 1026, 1030–31 (5th Cir.2011) (citations omitted).

In its motion, the United States contends that some of plaintiff's claims are subject to dismissal because they constitute intentional torts which are excepted from the FTCA's waiver and because plaintiff failed to exhaust administrative remedies as to other claims. Both

arguments potentially impact the court's subject matter jurisdiction to entertain the claims, and therefore, are analyzed via motion to dismiss for lack subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. *See Hinojosa v. U.S. Bureau of Prisons*, 506 Fed. Appx. 280, 282 (5th Cir.2013); *James v. Mason*, 513 Fed. Appx. 364, 366 (5th Cir.2013), *on reh'g in part*, 12-30308, 2013 WL 6481622 (5th Cir. May 20, 2013).[3]

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citation omitted). The party seeking to invoke jurisdiction bears the burden of demonstrating its existence. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). The court can resolve a motion to dismiss for lack of subject matter jurisdiction "based on (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Enable Mississippi River Transmission, L.L.C. v. Nadel & Gussman, L.L.C.*, 844 F.3d 495, 497 (5th Cir.2016) (citations and internal quotation marks omitted).

    a)    <u>FTCA Intentional Tort Exception</u>

The FTCA's limited waiver of sovereign immunity includes exceptions that, if applicable, bar suit against the government. *Truman v. United States*, 26 F.3d 592, 594 (5th Cir.1994). These exceptions must be strictly construed in favor of the government. *Id.* One

---

[3] The Supreme Court's decision in *United States v. Kwai Fun Wong,* ___ U.S. ___, 135 S.Ct. 1625 (2015), notwithstanding, 28 U.S.C. § 2675(a)'s exhaustion requirement remains jurisdictional. *Barber v. United States*, 2016 WL 1253819 at *2 n.2 (5th Cir. Mar. 30, 2016). Failure to exhaust administrative remedies deprives the court of subject matter jurisdiction. *See Cook v. United States on behalf of U.S. Dept. of Labor*, 978 F.2d 164 (5th Cir. 1993).

such exception to the government's waiver of immunity is for "[a]ny claim arising out of assault, battery, false imprisonment . . ." 28 U.S.C. § 2680(h).

In defining this exception, the Fifth Circuit explained that

> [t]o determine whether a claim is one "arising out of" any of these enumerated torts, we focus on the conduct upon which the plaintiff's claim is based. If the conduct upon which a claim is based constitutes a claim "arising out of" any one of the torts listed in section 2680(h), then the federal courts have no jurisdiction to hear that claim. Even if a plaintiff styles a claim so that it is not one that is enumerated in section 2680(h), the plaintiff's claim is still barred "when the underlying governmental conduct 'essential' to the plaintiff's claim can fairly be read to 'arise out of' conduct that would establish an excepted cause of action" . . .
>
> In contrast, if a plaintiff bases a claim on conduct that does not constitute a claim "arising out of" a tort specified in section 2680(h), then the plaintiff's suit is not barred. Even in cases in which the facts alleged in a complaint have two distinct aspects that may give rise to two similar torts, "the partial overlap between . . . two tort actions does not support the conclusion that if one is excepted under the Tort Claims Act, the other must be as well . . . So long as some aspect of the conduct upon which a plaintiff bases a tort claim does not constitute a tort listed in section 2680(h), the suit is not barred.

*Truman*, 26 F.3d at 594–95 (internal citations omitted).

With the foregoing guideposts to mark our path, the court initially observes that plaintiff's claim for "false imprisonment," denominated as such, plainly is excluded from the FTCA. *See Cross v. United States*, 159 Fed. Appx. 572, 575 (5th Cir.2005). However, plaintiff's complaint alleges that nursing staff placed Clarence Garrett in a four-point restraint, without authorization by a physician, for more than 24 hours at a time, and then failed to check the restraints to ensure proper circulation. (Compl., ¶ 13). These allegations are encompassed within plaintiff's claim for medical malpractice,[4] which remains distinct from a "false

---

[4] Case law recognizes a potential duty owed by medical providers arising out of the use of, or failure to use bed restraints. *See e.g., Borne v. St. Francis Med. Ctr.*, 655 So.2d 597, 600 (La. App. 2d Cir. 1995); *Thomas v. Sw. Louisiana Hosp. Ass'n*, 833 So.2d 548, 552 (La. App. 3d Cir. 2002); *Hays v. Christus Schumpert N. Louisiana*, 72 So.3d 955, 965 (La. App. 2d Cir.

6

imprisonment" claim.[5]

The court further observes that § 2680(h) does not bar a claim for intentional infliction of emotional distress. *Truman, supra*; *Grost v. United States*, 648 Fed. Appx. 459, 461 (5th Cir.2016). Rather, the FTCA bars an intentional infliction of emotional distress claim only to the extent it arises out of conduct that would establish an excepted cause of action, e.g., assault or battery. *Grost, supra*. Here, however, plaintiff alleged that Clarence Garrett felt intimidated by Overton Brooks physicians because they informed him in a loud voice that he was a problem, and it would be best if he were dead. (Compl., ¶ 23). Furthermore, Dr. Newell, in the absence of Kenyon Garrett, persuaded Clarence Garrett to sign a "Do Not Resuscitate" ("DNR") form. *Id*.

If, as alleged, the physicians yelled at Clarence Garrett and advised him that it would be if he were dead in support of their efforts to persuade him to sign a DNR, then these acts of verbal intimation arguably would constitute extreme and outrageous behavior sufficient to support a claim for intentional infliction of emotional distress, with resulting emotional damages. *See White v. Monsanto, Co.*, 585 So.2d 1205, 1209 (La. 1991). Furthermore, this claim is not precluded by the assault and battery exceptions to the FTCA because "[a]ssault and battery are designed to protect people from harmful or offensive contact and from the apprehension of such

---

2011); *McGillivray v. Rapides Iberia Mgmt. Enterprises*, 493 So.2d 819, 822 (La. App. 2nd Cir. 1986) (nursing home).

[5] False imprisonment represents the "unlawful and total restraint of the liberty of the person." *Rice v. ReliaStar Life Ins. Co.*, 770 F.3d 1122, 1136 (5th Cir.2014) (citing *Crossett v. Campbell*, 122 La. 659, 664, 48 So. 141, 143 (La.1908)). To establish a claim for false imprisonment, a plaintiff must prove that (1) he was detained and (2) his detention was unlawful. *Id*. Here, plaintiff's medical malpractice claim related to the use of restraints does not require any finding that his restraint was "unlawful." Accordingly, the claim does not arise out of a claim for false imprisonment and it not excepted from redress under the FTCA. *See Truman, supra*.

contact . . ." *Truman, supra*. In this case, there is no indication that the physicians harmfully or offensively touched Clarence when they tried to persuade him to sign the DNR. There also are no allegations that the physicians placed Clarence Garrett in fear of a harmful or offensive contact. Instead, it appears that they relied on verbal intimidation to influence him.

As a result, the court finds that plaintiff's claims for intimidation and verbal abuse state a cognizable claim for intentional infliction of emotional distress which plausibly resulted in *emotional distress* and/or psychological injury that is not barred by § 2680(h).

    b)    <u>Administrative Exhaustion</u>

The FTCA provides for administrative exhaustion as follows,

> [a]n action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

28 U.S.C. § 2675(a) (in pertinent part).

The purpose behind the FTCA's administrative exhaustion requirement is to provide a claimant with "a meaningful opportunity to resolve the matter without the necessity of judicial intervention." *Montoya v. United States*, 841 F.2d 102, 104 (5th Cir. 1988). More directly, "Congress instituted the presentation requirement to ease court congestion and avoid unnecessary litigation, while making it possible for the Government to expedite the fair settlement of tort claims asserted against the United States." *Frantz v. United States*, 29 F.3d 222, 224 (5th Cir.1994) (citation omitted and internal quotation marks omitted).

Accordingly, § 2675(a) is satisfied, "if the claimant (1) gives the agency written notice of

his or her claim sufficient to enable the agency to investigate and (2) places a value on his or her claim." *Id*. (citing *Adams v. United States*, 615 F.2d 284, 289, clarified, 622 F.2d 197 (5th Cir.1980). Plaintiffs need not enumerate specific legal theories of recovery in their administrative claims. *Frantz, supra*. Rather, "the purpose of § 2675 will be served as long as a claim brings to the Government's attention facts sufficient to enable it thoroughly to investigate its potential liability and to conduct settlement negotiations with the claimant." *Id*. In other words, "if the Government's investigation of [the plaintiffs'] claim should have revealed theories of liability other than those specifically enumerated therein, those theories can properly be considered part of the claim." *Id*. (citation omitted).

The parties vehemently dispute what materials plaintiff included in his administrative claim submission. This dispute has spawned collateral motion practice, with plaintiff accusing the government of misleading the court, among other things. *See* discussion, *infra*. However, the court need not resolve what items actually comprised plaintiff's administrative claim, because even considering only the non-disputed components of plaintiff's submission, i.e., the SF 95 and attached narrative,[6] the court finds that the submission included sufficient facts for the government to investigate the claims presently asserted in plaintiff's complaint, as amended.

Initially, the court observes that plaintiff asserted in his SF 95 that during Clarence Garrett's April 11 to July 1, 2015, admission to Overton Brooks, he was provided with substandard medical care that culminated in medical malpractice. Furthermore, plaintiff's administrative claim requested $4 million in compensation, which mirrors the request in his complaint.

---

[6] *See* Compl., Exhs 1A-1B; Gov.'t Reply, pg. 4 [doc. # 24]; Gov.'t Sur-reply [doc. # 32-1].

The government argues that plaintiff's claims for false imprisonment, abuse, intimidation, and psychological injury were not mentioned in his administrative narrative. Furthermore, in response to plaintiff's motion to dismiss,[7] the government submitted the declaration of Ouida Adams, a paralegal specialist for the VA Office of General Counsel, who investigated plaintiff's administrative tort claim. [doc. # 28-1]. In her declaration, Ms. Adams stated that plaintiff did not inform the VA of additional claims for false imprisonment, abuse, wrongful restraint and seclusion, intimidation, or psychological injury. *Id*.

Ms. Adams' declaration, however, misses the mark. The issue is not necessarily the particular claims identified by plaintiff, but whether plaintiff set forth sufficient facts for the government to investigate these additional theories of liability. The court finds that plaintiff did so.

As detailed above, the undersigned has recommended dismissal of plaintiff's claim for false imprisonment, and instead, construed it as a claim for negligent restraint which falls within the auspices of his medical malpractice claim. Moreover, plaintiff alleged in his administrative claim that nursing staff failed to provide Clarence Garrett with "proper skin care and mobility," including the failure to turn him every two hours. The government's investigation of plaintiff's allegations of improper skin care and failure to move the patient should have uncovered the bases for plaintiff's claim for negligent restraint which he attributes to staff locking and tying Clarence Garrett to the bed to prevent movement, thereby injuring his right leg.

Furthermore, plaintiff alleged in his administrative claim that he wielded a power of attorney for medical decision-making regarding Clarence Garrett, but hospital staff failed to notify or consult him regarding medical decision-making. In fact, plaintiff alleged in his

---

[7] *See* discussion, *infra*.

10

administrative claim that Clarence Garrett was consistently disoriented and unable to make sound decisions regarding his medical care. Thus, Kenyon Garrett advised hospital staff to contact him regarding medical decision-making. Hospital staff, however, failed to do so.

The government's investigation of plaintiff's claim for failure to obtain informed consent should have uncovered the circumstances surrounding the hospital's solicitation of a DNR release from Clarence Garrett, which, according to plaintiff, it obtained outside the presence of his designated medical decision-maker, thereby forming the basis for plaintiff's claim for intimidation/intentional infliction of emotional distress. *See Frantz, supra* (claim for medical negligence should have revealed the possibility of an informed consent claim).

Plaintiff's administrative claim also included factual allegations to support claims for failure to diagnose (e.g., left shoulder effusion in lieu of left shoulder carcinoma); failure to provide proper nutrition; failure to provide physical therapy; failure to provide basic skin care; failure to ensure adequate hygiene; failure to monitor the side effects of the patient's medication; and the physicians' failure to discuss his condition with proper specialties. These allegations, in combination, suffice to evidence abuse, via neglect of care, by hospital staff, which is redressable pursuant to plaintiff's claims for intentional infliction of emotional distress and/or medical malpractice.[8] Finally, plaintiff alleged that Clarence Garrett suffered "mental decline" as a result of the hospital staff's actions, which should have propelled the government to investigate whether the challenged conduct caused Clarence to suffer psychological injury.

In sum, the court finds that plaintiff, who is proceeding pro se in this matter, administratively exhausted the claims alleged in his complaint, as amended. Therefore, the court

---

[8] In other words, while Louisiana law may not recognize abuse and/or neglect as theories of recovery, these terms may be used informally to describe conduct that constitutes a cognizable tort such as intentional infliction of emotional distress or negligence.

11

may exercise subject matter jurisdiction over the claims.

## II. Plaintiff's Motion to Dismiss

By this motion, plaintiff ostensibly petitions the court to "dismiss" the suit because of the government's perjury, and enter a $4 million judgment in his favor. The court observes, however, that the government did not initiate this suit – plaintiff did. Therefore, the court cannot "dismiss" any claims of the government. Instead, plaintiff likely intended for the court to strike the government's answer and enter a judgment of default, which is how the court will construe plaintiff's motion.

In support of his motion, plaintiff complained that the government incorrectly stated in its reply brief [doc. #s 20 & 24] that the first time that plaintiff alleged that hospital staff had tied his father to the hospital bed was in his response to the motion to dismiss [doc. # 17]. As it turns out, plaintiff made the same allegation earlier in his supplemental complaint. [doc. # 3, ¶ 34]. Plaintiff further contends that the government misled the court by falsely stating that plaintiff failed to include his claims for emotional abuse, wrongful restraint and seclusion, intimidation, abuse, and psychological injury in his administrative claim. Consequently, plaintiff argues that the government committed perjury.

At minimum, a perjury charge requires proof that a witness testified under oath about material matters that the witness knew *at that time* to be false. 18 U.S.C. § 1621; *United States v. Swink*, 21 F.3d 852, 857 (8th Cir.1994). Here, however – aside from the fact that this is a civil, not a criminal proceeding[9] – the brief(s) submitted by counsel do not constitute evidence or testimony submitted under oath. Moreover, the court cannot attribute any ill intent to counsel for overlooking plaintiff's statement in his supplemental complaint – considering that it

---

[9] A perjury charge is a criminal matter that must be prosecuted by the U.S. Attorney.

was nestled in the middle of a nearly one page long, single spaced paragraph.[10]

The court enjoys the inherent authority to strike a pleading. *Ocean-Oil Expert Witness, Inc. v. O'Dwyer*, 451 Fed. Appx. 324, 332 (5th Cir.2011) (citation omitted). The "extreme sanction of striking an answer, however, can be used only where there is bad faith or wilful abuse of the judicial process." *Id*. In this case, the court discerns no bad faith behind the government's arguments advanced in support of its motion to dismiss. There appears to be a bonafide dispute between the parties regarding the contents of plaintiff's administrative claim. Further, while the government's arguments ultimately did not carry the day, they were understandable and reasonable given the imprecise and ambiguous nature of plaintiff's claims and allegations.

In sum, the undersigned finds no cognizable grounds for a finding of perjury or bad faith on behalf of the government. Accordingly, dismissal/striking of the answer and entry of default judgment is neither warranted, nor available.

## **Conclusion**

IT IS RECOMMENDED that the motion to dismiss for lack of subject matter jurisdiction [doc. # 7] filed by the United States be GRANTED-IN-PART, and that plaintiff's claim for false imprisonment be dismissed without prejudice. Fed.R.Civ.P. 12(b)(1).

IT IS FURTHER RECOMMENDED that the motion to dismiss [doc. # 7] otherwise be DENIED.

IT IS FURTHER RECOMMENDED that plaintiff's motion to dismiss for perjury [doc. # 26] be DENIED.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have

---

[10] Incidentally, plaintiff's complaint did not comply with Local Rule 10.1, which requires all filings to be double spaced. L.R. 10.1.

**fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 20th day of December 2017.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE